IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| **Plaintiff,** : | Case No. 2:20-cr-00007-1 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| THOMAS GOUGH, : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before the Court on Defendant Thomas Gough's Motion for Compassionate Release (ECF No. 54) and his supplement thereto (ECF No. 56). For the reasons that follow, Defendant's Motions are **DENIED**.

### I. BACKGROUND

On October 27, 2020, Mr. Gough was sentenced to fifty-one (51) months imprisonment and a three-year term of supervised release for one count of Illegal Possession of a Firearm by a Convicted Felon, pursuant to 18 U.S.C. 922(g)(1). (ECF No. 43 at 1–4). He was also ordered to pay a fine in the amount of $5,000 as well as a $100 assessment. (*Id*. at 4). Mr. Gough was taken into custody immediately after sentencing. (*Id.* at 2). He is currently held at FCI Beckley in Beaver, West Virginia (ECF No. 54-2 at 1). His scheduled release date is September 6, 2023.

On February 3, 2022, Mr. Gough filed a *pro se* Motion for Compassionate Release. (ECF No. 54). On March 2, 2022, through counsel, he filed a Supplement thereto ("Supplemental Motion"). (ECF No. 56).

In his *pro se* Motion for Compassionate Release, Mr. Gough argues that his obesity, asthma, and hepatis-C put him at a higher risk for contracting COVID-19. (ECF No. 54 at 1). Mr.

1

Gough also states that he is housed in a unit where a "nine (9) day quarantine lock down" took place in 2021. (*Id.* at 3). In addition to concerns about COVID-19, he lists good behavior and his "viable re-entry plan" as factors this Court should consider when ruling on his motion. (*Id.* at 1). In the Supplemental Motion, Mr. Gough asserts through counsel that in addition to his concerns about COVID-19, he is also not satisfied with how the Bureau of Prisons ("BOP") is handling his health concerns. (ECF No. 56 at 3–4). The Supplemental Motion concedes that while the Court knew of Mr. Gough's health concerns at sentencing, the impact of those concerns was not known at the time. (*Id.* at 4).

The Government objects to Mr. Gough's request, arguing that his incarceration during the COVID-19 pandemic does not present an "extraordinary and compelling" reason for sentence reduction. (ECF No. 57 at 5–10). The Government further asserts that Mr. Gough's medical records do not suggest that Mr. Gough suffers any severe complications or COVID-19 symptoms but do show that he regularly consulted medical personnel at the prison. (*Id.* at 9). Further, the Government claims that a sentence reduction would not be appropriate because of Mr. Gough's criminal history. (*Id.* at 12–13).

## II. STANDARD OF REVIEW

A sentencing court "may reduce" a defendant's "term of imprisonment" pursuant to the "compassionate release" provision of 18 U.S.C. § 3582(c) when the defendant exhausts administrative rights and shows "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A district court has discretion to grant or deny such a petition, but the court must "supply specific factual reasons for [its] compassionate release decisions." *United States v. Jones*, 980 F.3d 1098, 1101–02 (6th Cir. 2020).

In *Jones*, the Sixth Circuit set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id*. at 1106–08. After clearing the threshold requirement of exhaustion, *see United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), the analysis proceeds as follows:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[ ]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added) . . . . At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1107–08 (alterations original). Each step is a mandatory prerequisite to attaining compassionate release, so a defendant's failure to satisfy any step compels denial of the motion. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. Of course, in granting a compassionate-release motion, district courts must address all three steps." (internal citations omitted)).

### III. ANALYSIS

#### A. Administrative Exhaustion

Administrative exhaustion is a threshold requirement in any motion for compassionate release. This condition is satisfied when a defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a [compassionate release] motion on the defendant's behalf or [upon] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that this requirement is not jurisdictional, but rather "a claim-processing rule" that "bind[s] the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d, at 833.

3

Here, the Government concedes that Mr. Gough exhausted his administrative remedies as thirty (30) days have passed from the receipt of such a request by the warden of FCI Beckley. (ECF No. 57 at 4). As such, the Court may begin the three-step inquiry in *Jones* and determine whether Defendant has shown "extraordinary and compelling reasons" for a sentence reduction.

### B. Extraordinary and Compelling Reasons

Defendant, both in his *pro se* motion and Supplemental Motion through counsel, generally cites the COVID-19 pandemic as providing the "extraordinary and compelling reasons" for compassionate release. (ECF Nos. 54, 56). This topic generated extensive discussion within the Circuit, and answers evolved over the course of the pandemic. Before vaccines were widely available, this Court found, like many others, that the heightened risk of rapid transmission in prison facilities could constitute an "extraordinary and compelling" circumstance for inmates whose age or health left them particularly vulnerable to severe illness. *See, e.g.*, *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (granting compassionate release to older inmate with diabetes and high blood pressure); *United States v. Glassburn*, No. 2:18-cr-00075-2, 2020 WL 5366113, at *2 (S.D. Ohio Sept. 8, 2020) (finding inmate's chronic obstructive pulmonary disease ("COPD") was an "extraordinary and compelling" reason but denying compassionate release because inmate would pose a danger to the community).

More recently, however, the Sixth Circuit has narrowed the set of circumstances where risks associated with COVID-19 may be considered "extraordinary and compelling reasons" for compassionate release. Noting the widespread availability of vaccines by mid-2021, the Sixth Circuit wrote that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction," though the court did not foreclose relief for

4

"a prisoner who is 'unable to receive or benefit from a vaccine.'" *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) and *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021)); *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (citing *Lemons* and affirming district court's denial of compassionate release to a fully vaccinated inmate). In January 2022, the Sixth Circuit ruled that in the context of COVID-19 a defendant's comorbidities would not establish "extraordinary or compelling reasons" where they "existed at the time of sentencing" and the defendant "offered no evidence as to how the[] conditions have worsened" since then. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). The court also reiterated that given the availability of COVID-19 vaccines, the pandemic itself would not be considered an "extraordinary and compelling" reason, "absent extenuating circumstances." *Id.* (citing *Lemons*, 15 F.4th at 751).

While these decisions did not end the availability of compassionate release due to COVID-19, they narrowed it significantly. To summarize the current state of Sixth Circuit law, any defendant who was offered the vaccine would have to show that he was unable to receive or benefit from it. *See Lemons*, 15 F.4th at 751. Such cases might include a defendant whose medical condition makes vaccination truly unsafe, or the emergence of new viral strains that are highly vaccine resistant. Additionally, a defendant alleging risk due to comorbidities would have to show new developments that were not before the court at the time of sentencing. *See McKinnie*, 24 F.4th at 588. In other words, the condition must have begun or worsened during the term of imprisonment. *Id.*

Defendant Gough cannot satisfy either requirement. First, Defendant acknowledges that he is vaccinated. (ECF No. 54 at 2). Vaccines have proven effective at preventing severe illness and

death from the delta (and now omicron) strains.[1] The risk of illness is mitigated further by the availability of vaccine boosters,[2] including in the BOP.[3] Second, separate from the pandemic, Defendant asserts that the BOP's failure to care for his health concerns is an "extraordinary and compelling" reason. (ECF No. 56 at 3–4). An "extraordinary and compelling" reason "is one that is unusual, rare, and forceful." *United States v. McCall*, No. 21-3400, 2022 WL 17843865, at *6 (6th Cir. Dec. 22, 2022). Outside of the COVID-19 context, general health concerns have been found to meet this standard in only unique circumstances. *See, e.g.*, *United States v. Mellon*, No. 2:20-cr-140, 2022 WL 2704151, at *1 (S.D. Ohio July 12, 2022) (finding the "extraordinary and compelling element" was met where a defendant's kidney disease required "constant dialysis" and "necessitated surgeries and external evaluations at a local hospital").

    Defendant's current health conditions are not sufficiently "unusual, rare, and forceful" to warrant release. *McCall*, 2022 WL 17843865, at *6. Defendant does not specify how his personal risk factors have worsened or now differ from his condition at sentencing. During his sentencing hearing, Mr. Gough stated that he was diagnosed with hepatitis C in May 2019, which was well over a year before his sentencing, and his attorney described his condition as "very advanced" at that time. (ECF No. 49, at 29, 8). Assuming that Defendant's other risk factors—namely obesity and asthma—were also preexisting, the Court notes that it sentenced Defendant several months into the pandemic, when the risks to incarcerated persons were generally known. While the Supplemental Motion states that the extent of Mr. Gough's health concerns was unknown at the time of sentencing (ECF No. 56, at 4), Defendant has not demonstrated clearly how his personal

---

[1] *Do COVID-19 Vaccines Protect Against the Variants?*, MAYO CLINIC (Mar. 4, 2022), https://www.mayoclinic.org/coronavirus-covid-19/covid-variant-vaccine (accessed Apr. 12, 2022).
[2] *COVID-19 Vaccine Boosters*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (accessed Apr. 12, 2022)
[3] *COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus (accessed Apr. 12, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance.").

risk factors substantially differ from their condition at sentencing thus warranting an "extraordinary or compelling reason" for compassionate release.

Besides COVID-19 and prior health conditions, Mr. Gough offers other "extraordinary and compelling reasons" for compassionate release. For example, Defendant engages in recidivism reduction programs, facilitates Narcotics Anonymous and Alcoholics Anonymous meetings, attends religious services, and completed a parenting class. (ECF Nos. 54 at 1–3, 6; 54-2 at 1). Defendant also claims that both his security level and risk of recidivism are low.[4] (*Id.* at 1).

These arguments fail under *McKinnie*. The former recasts those presented to the Court at sentencing and thus "are not new developments" that might warrant a sentence reduction. *McKinnie*, 24 F.4th at 588. Like the defendant in *McKinnie*, Mr. Gough "has offered no evidence as to how [his] conditions have worsened since his sentencing." *Id.* The latter argument is also foreclosed by *McKinnie*: "Rehabilitation, for one, is not by itself extraordinary and compelling." 24 F.4th at 588 (citing 28 U.S.C. § 994(t) and *United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021)).

Therefore, the Court finds that Defendant has not presented "extraordinary and compelling reasons" to justify compassionate release, and it **DENIES** his Motion on that basis.

### C. Applicable Policy Statements

In *Jones*, the Sixth Circuit clarified that "in cases where incarcerated persons file their own motions in district court for compassionate release," as opposed to the BOP moving on the person's behalf, the analysis of applicable policy statements changes. *Jones*, 980 F.3d at 1101–02. Specifically, where the motion is filed directly by an incarcerated person, U.S.S.G. § 1B1.13

---

[4] Defendant asserts that he has a low risk level according to PATTERN (Prisoner Assessment Tool Targeting Estimated Risk and Needs) which is a risk assessment tool developed by the Bureau of Prisons. *Pattern Risk Assessment*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmates/fsa/pattern.jsp (accessed Jan. 13, 2023).

(giving criteria for "extraordinary and compelling") is no longer considered an "applicable" policy statement. *Id.* at 1101. Accordingly, *Jones* instructs that courts "may skip step two" in those instances "and have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id*. at 1111. Because Defendant brings this Motion on his own behalf, the Court need not refer to the policy statement.

### D.  Sentencing Factors

This brings the Court to the final step of the *Jones* framework. Because the Court fully considered said factors when it imposed its sentence, and because the mandatory element of "extraordinary and compelling reasons" is lacking, the Court terminates its inquiry without reaching this third step of analysis. *Cf. Traylor*, 16 F.4th at 487 ("[B]ecause the district court determined that there was no extraordinary and compelling reason to grant Traylor's motion, it also did not abuse its discretion by denying the motion without addressing whether the 18 U.S.C. § 3553(a) factors support a sentence reduction.").

### IV.  CONCLUSION

For the reasons thus stated, Defendant's Motion for Compassionate Release (ECF No. 54) and the Supplement to the Motion (ECF No. 56) are **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: April 3, 2023**